FILED

09/09/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0398

DA 23-0398

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 202

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JASON DANIEL SHEWALTER,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC-06-45
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Tammy A. Hinderman, Appellate Defender Division Administrator,
Deborah S. Smith, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Brad Fjeldheim,
Assistant Attorney General, Helena, Montana

          James A. Lapotka, Lake County Attorney, Polson, Montana

Submitted on Briefs:  April 9, 2025

Decided:  September 9, 2025

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Jason Daniel Shewalter appeals the October 24, 2022 Judgment on Second Revocation, entered by the Twentieth Judicial District Court, Lake County. We consider:

1. *Whether the District Court erred by not granting credit for time served against Shewalter's revocation sentence.*

2. *Whether the District Court erred by denying any credit for elapsed time against Shewalter's sentence.*

3. *Whether Shewalter received ineffective assistance of counsel at the dispositional hearing.*

We affirm in part, reverse in part, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    Shewalter pled guilty to one count of criminal possession with intent to distribute in 2006 after a traffic stop uncovered large amounts of marijuana, cash, scales, and glass pipes, and police learned of an outstanding arrest warrant from Flathead County. Shewalter ultimately was sentenced for criminal possession to a 10-year commitment to the Department of Corrections (DOC), with 8 years suspended, to run consecutively to a sentence of 15 years with 10 years suspended, imposed in Flathead County. Shewalter began serving the suspended portion of his criminal possession sentence on March 14, 2017, whereupon Shewalter's probation officer reported multiple failures to comply with conditions, leading the State to petition to revoke the sentence. The District Court revoked the suspended portion of his sentence and, on December 6, 2018, imposed a revocation sentence of an 8-year DOC commitment with 5 years suspended, including 49 days of

2

credit for time served but no credit for any elapsed time. Shewalter did not appeal from this first revocation and sentence.

¶3 On June 10, 2022, while Shewalter was serving the suspended portion of his revocation sentence, the State petitioned to revoke the remaining suspended sentence based in part on the probation officer's June 8, 2022 Report of Violation (ROV), which asserted three violations of Shewalter's probationary conditions stemming from an arrest in Flathead County for criminal trespass, felony possession of methamphetamine and heroin, and misdemeanor possession of drug paraphernalia. In the ROV, the probation officer attested that he had given "multiple" verbal reprimands to Shewalter. The ROV summarized that "[Shewalter] has failed in several key areas of community supervision. Reporting in as directed, employment, residence, on-going illegal substance use and failing to attend outpatient chemcial [sic] dependency treatment to name a few." It added that "[o]n 3/17/2022 a pick up and hold order was issued due to failing to report to probation and Jason had a failure to appear warrant with $650.00 Bond. . . . On 4/17/2022 Jason was taken into custody by the Montana Highway Patrol due to the vehicle Jason was a passenger in had a broken, methamphetamine pipe in the passenger door. . . . While at the jail, he signed a Substance Use Admission Form admitting to using fentanyl." The ROV recommended that Shewalter's December 14, 2018 revocation sentence be revoked a second time, and that "he receive a five (05) year Commitment to the Department of Corrections with none suspended."

¶4 On June 28, 2022, the State completed an addendum to the ROV alleging that Shewalter had committed three additional non-compliance violations of Court/parole

3

Condition #8 (compliance with all laws and ordinances), including felony possession of dangerous drugs, obstructing a peace officer, and resisting arrest. The ROV addendum again stated that multiple verbal reprimands had been given. Additional details regarding Shewalter's substance use included:

> Jason had a couple chances to get into the Recovery Centers of MT and participate in chemical dependency treatment. He seems to be resitive [sic] to get into treatment on his own. His motivation and willingness to lead a sober lifestyle is low. . . . Jason's current illegal substance use seems to be steady, constant use. He is not showing motivation and drive to get the help needed. Jason needs a more structured living environment. His twin brother [] has stated a huge concern for his brother's health and welfare if Jason is not locked up continuing to do whatever on the streets. Jason has no home or apartment of his own. Jason will continue to couch surf and stay with people whom are engaged in using illegal substances.

The addendum concluded with a recommendation of no credit for elapsed time, and the same sentence as recommended in the original ROV—a five-year DOC commitment with no time suspended. After his arrest, Shewalter posted bond but failed to appear at his adjudication hearing on August 25. At that hearing the District Court took testimony from Wayne Stufflebeem (Stufflebeem), a Columbia Falls police officer, who stated that he had dealt with Shewalter numerous times, including that morning, when he responded to the home of Shewalter's girlfriend who had overdosed and was unresponsive.

¶5 The adjudication hearing continued, in conjunction with the dispositional hearing, on October 13, 2022. The District Court heard testimony from Shewalter's probation and parole officer, Ron Linn (Linn), and again from Stufflebeem. Stufflebeem testified regarding the multiple interactions he had with Shewalter during June of 2022, and Linn

4

testified about the entirety of his time as Shewalter's probation officer since October 2021.

Linn stated:

> Q. Okay. When was the first time that he caused a problem for you or needed to be sanctioned?
>
> A. To be sanctioned -- the sanctions can be as little as a verbal warning. And I've given him many to try to work with him and get him to comply with little conditions that the court wants him to do.
>
> Q. Okay. Has that noncompliance existed throughout the year that you've been supervising him, or was it something that just most recently happened in June, I guess, is what I'm getting at?
>
> A. The serious violations were -- began on June 3rd. But the ones that just required minor sanctions, like verbal warnings and redirect, happened the whole year.
>
> Q. Throughout the whole –
>
> A. Right.

The District Court orally granted the amended petition to revoke Shewalter's sentence and moved to sentencing. The court questioned Linn further regarding his recommendation of no credit for street time:

> Q. In regards to credit for street time, you indicated that he has required redirection, and verbal reprimanding, and other interventions throughout the entirety of the year that he's been on probation with you. Do you believe that he's entitled to any street time?
>
> A. I put -- I put none. And that is I reviewed his case a couple of times and I tried to look and give him the benefit of a doubt, even one instance per month, and I couldn't find any. Very difficult to work with. If he would have shown some compliance with me to want to work with the minor things I wanted him to do, I would – I'd be giving him -- requesting that he get street time. But none is welcomed in this case.

¶6     The District Court imposed the prosecutor's recommendation of a 5-year DOC commitment with no time suspended, including recommendations for NEXUS, pre-release, and mental health treatment. After further discussing credit for elapsed time, the District Court stated, "I'm not going to grant any street time just because there's been a continued involvement of Probation and Parole for purposes of trying to keep everybody straight and appropriate," also noting that "the officer [Linn] did testify that he used lesser degrees of redirection and verbal warnings during [the entire time Shewalter was on probation] and things just continued to get worse. So the Court has significant concern that we're going to get anywhere with some of the things that are happening." Additionally, despite discussion about the time served by Shewalter, neither the District Court's oral pronouncement nor written judgment gave credit for time served.

¶7     Shewalter appeals, asserting his right to credit for time served, elapsed street time, and alternatively claiming ineffective assistance of his revocation counsel.

## STANDARD OF REVIEW

¶8     This Court reviews a district court's calculation of credit for time served for legality. *State v. Risher*, 2024 MT 309, ¶ 6, 419 Mont. 395, 560 P.3d 1203. "Calculating credit for elapsed street time and time served is not a discretionary act, but a legal mandate," reviewed de novo. *State v. Charles*, 2025 MT 58, ¶ 10, 421 Mont. 210, 565 P.3d 1191 (citing *State v. Pennington*, 2022 MT 180, ¶ 18, 410 Mont. 104, 517 P.3d 894). A district court's decision to revoke a suspended sentence is reviewed for abuse of discretion. *State v. Jardee*, 2020 MT 81, ¶ 5, 399 Mont. 459, 461 P.3d 108. "Additionally, 'revocation decisions involve both legal and factual findings,' and we review a district court's legal

6

findings de novo and its factual findings for clear error." *Jardee*, ¶ 5 (quoting *State v. Johnson*, 2018 MT 277, ¶ 10, 393 Mont. 320, 430 P.3d 494).

**DISCUSSION**

¶9    *1. Whether the District Court erred by not granting credit for time served against Shewalter's revocation sentence.*

¶10    Shewalter argues his sentence is unlawful because it fails to grant him credit for time served. Although Shewalter failed to object to this issue at the trial court, he argues review is appropriate under *State v. Lenihan*, 184 Mont. 338, 602 P.2d 997 (1979), and the State does not disagree. *See State v. Kotwicki*, 2007 MT 17, ¶ 8, 335 Mont. 344, 151 P.3d 892 (*Lenihan* "provides an exception to the general rule and allows appellate review of a criminal sentence that is alleged to be illegal or in excess of statutory mandates, even if the defendant raised no objection in the trial court.").

¶11    Section 46-18-203(7)(b), MCA, states, in relevant part, that "[c]redit must be allowed for time served in a detention center or for home arrest time already served." We have explained that credit for time served under § 46-18-203(7)(b), MCA, is not a discretionary decision, but a mandate. *State v. Crazymule*, 2024 MT 58, ¶ 9, 415 Mont. 537, 545 P.3d 66. The State concedes the District Court erred by not crediting Shewalter's sentence for the time he served in a detention center.

¶12    However, the parties disagree about the calculation of the number of days that should be credited toward Shewalter's sentence. Shewalter served four different periods of detention related to the subject revocation proceeding. The State calculates these periods to include 136 days, while Shewalter calculates them to be 149 days. The parties agree to

7

the number of days in the first two periods of detention, the first being 32 days from April 17, 2022, to May 18, 2022, pursuant to a pick up and hold order from the DOC for Shewalter's failure to report to his probation officer. The second period is from May 23, 2022, to May 26, 2022, following Shewalter's arrest for illegal drug use, which the parties agree involved 4 days.

¶13 Regarding the third period, on June 16, 2022, the District Court issued an arrest warrant for Shewalter in connection with the second revocation proceeding. On June 23, 2022, as specified in the addendum to the ROV, officers arrested Shewalter for possession of dangerous drugs, obstructing a peace officer, and resisting arrest and took him to Flathead County Detention Center. Shewalter remained there until he was released on August 18, 2022. The State argues Shewalter is entitled to 57 days of credit. Shewalter counters that he should receive credit for an additional 7 days by starting the period on June 16, when the warrant was issued, asserting he was already incarcerated then. *See Crazymule*, ¶ 14. However, the State insists Shewalter was not incarcerated on June 16 and remained on his own recognizance until June 23.

¶14 Regarding the fourth period, on August 26, 2022, the District Court issued an arrest warrant for Shewalter when he failed to appear at his scheduled adjudication hearing. The State says the warrant was served upon Shewalter on September 1, 2022, noting Stufflebeem's testimony that he did not arrest Shewalter on August 26, and thereafter he remained incarcerated until October 13, 2022, for a total of 43 days. Shewalter disputes this calculation, insisting he was placed in detention on August 26, 2022, and thus deserves credit for time served from August 26, 2022, until October 13, 2022, or a total of 49 days.

8

The parties thus dispute 13 days, and we could not resolve these factual questions upon our review of the record. Shewalter suggests that the Court "remand to the District Court to determine whether Mr. Shewalter is entitled to credit for time served for any or all of these 13 days in addition to the 136 days upon which the parties agree."

¶15 Since we are reversing the judgment and remanding for entry of an amended judgment, we further remand the question of Shewalter's entitlement to the disputed 13 days to the District Court. Perhaps, upon remand, the parties will be able to resolve this factual issue and stipulate to the correct number of days for purposes of the District Court's entry of the amended judgment.

¶16 *2. Whether the District Court erred by denying any credit for elapsed time against Shewalter's sentence.*

¶17 Shewalter argues the District Court erred by failing to grant him any credit against his sentence for lapsed or "street" time. He contends the District Court merely offered general statements that he had been "problematic," and not "ever good," but failed to identify specific violations other than general "pattern[s] of behavior" for each period he was not in detention. The State answers that Linn's testimony, based on his recollection, coupled with two reports of violations, clearly demonstrated that there was no period of street time where Shewalter was compliant and thus deserving of credit.

¶18 Section 46-18-203(7)(b), MCA, provides that if a suspended or deferred sentence is revoked, the judge shall "consider any elapsed time, consult the records and recollection of the probation and parole officer, and allow all of the elapsed time served without any record or recollection of violations as a credit against the sentence." In applying this

statute, it is "insufficient for a district court to base a denial of street time credit solely on a 'pattern' of criminal behavior," instead the State must "point to an actual violation by the defendant, in the relevant time period, found in the record or recollection of the probation officer, to establish a basis for denial of street time credit for that period." *Jardee*, ¶ 11. However, violations may be considered continuous if the record or recollection of the probation officer supports such conclusion. *See Jardee*, ¶¶ 11-12 (defendant's failure to report his correct address to probation and parole, and instead "always reported" a false address, violated his probation condition and supported the district court's determination to deny elapsed time credit during the period).

¶19 The conditions of Shewalter's suspended sentence as outlined in the original 2006 Judgment and Commitment state, in part:

> 2. The Defendant shall not change his place of residence without first obtaining permission from his Probation Officer.
>
> 5. The Defendant shall maintain employment or a program approved by his Probation Officer.
>
> 6. The Defendant shall personally report to his Probation Officer as directed. . . . The Defendant shall make himself available to his Probation Officer as requested.
>
> 10. The Defendant shall not use or possess illegal drugs . . . . The Defendant shall not be in control of or under the influence of any drugs, nor will have in his possession any drug paraphernalia.
>
> 14. The Defendant shall comply with all city county, state and federal laws and ordinances and conduct himself as a good citizen. The Defendant shall at all times be cooperative and truthful in all of his communications and dealings with his Probation Officer.
>
> 20. He will not knowingly associate with persons who use drugs, abuse alcohol, or otherwise violate the law.

The record indicates that Shewalter did not have a permanent address, was difficult to contact, did not maintain employment, had a pick up and hold order issued on March 17, 2022, for failing to report to probation, had a failure to appear warrant issued, was taken into custody on April 17, 2022, when the driver of a car he was a passenger in was arrested for driving while intoxicated and a meth pipe was found in the car, and signed a declaration admitting his fentanyl use while at the jail. On May 23, 2022, Linn performed a home check of a residence in an effort to locate Shewalter and found him hiding there. Shewalter admitted to using methamphetamine and also tested positive. Summarizing his efforts, Linn testified that "[Shewalter] has failed in several key areas of community supervision. Reporting in as directed, employment, residence, on-going illegal substance use and failing to attend outpatient chemcial [sic] dependency treatment to name a few."

¶20 While Shewalter correctly argues it is insufficient for the District Court to deny elapsed street time credit based solely on a general pattern of criminal behavior, the record here demonstrates there was no period of elapsed time wherein Shewalter was compliant with the conditions of his parole, as supported not only through the record of violations, arrests, and the ROV, but also the recollections of Linn concerning the entirety of his time as Shewalter's probation officer. Thus, the District Court's determination did not rely only on a pattern of criminal behavior. We hold that the District Court correctly denied Shewalter elapsed street time credit under § 46-18-203(7)(b), MCA.

11

¶21   *3. Whether Shewalter received ineffective assistance of counsel at the dispositional hearing.*

¶22   Lastly, Shewalter claims he received ineffective assistance of counsel (IAC). Shewalter argues that he received ineffective assistance when defense counsel failed to advocate for elapsed time credit toward his sentence. Defense counsel did not raise the issue, but Shewalter himself requested the credit during the sentencing hearing, whereupon the District Court discussed it. The State answers that Shewalter was not entitled to the relief of elapsed time credit and therefore could not be prejudiced by defense counsel's failure to advocate for it.

¶23   "When considering ineffective assistance of counsel (IAC) claims, Montana courts apply the United States Supreme Court's two-prong test as articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)." *State v. Bryson*, 2024 MT 315, ¶ 29, 419 Mont. 490, 560 P.3d 1270 (citing *Oliphant v. State*, 2023 MT 43, ¶ 37, 411 Mont. 250, 525 P.3d 1214). The first prong of the *Strickland* test requires that the defendant shows "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Oliphant*, ¶ 37 (quoting *Golie v. State*, 2017 MT 191, ¶ 7, 388 Mont. 252, 399 P.3d 892). The second prong requires a showing that counsel's performance prejudiced the defense, and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Oliphant*, ¶¶ 37, 44. "If an insufficient showing is made regarding one prong of the [*Strickland*] test, there is no need to address the other

12

prong." *Bryson*, ¶ 29 (quoting *Whitlow v. State*, 2008 MT 140, ¶ 11, 343 Mont. 90, 183 P.3d 861).

¶24 We conclude under the second prong that no prejudice can be shown. Although Shewalter's counsel admittedly failed to include elapsed street time credit in the sentencing recommendation, the District Court nonetheless considered the issue and, as discussed above, questioned the probation officer and concluded upon the record that no credit was warranted in this case. We have affirmed that determination. Had counsel recommended elapsed time, the result would not have been different. Because Shewalter's claim fails the second prong we need not analyze whether counsel's performance was deficient.

## CONCLUSION

¶25 The District Court erroneously denied Shewalter credit for time served, but we remand this issue for entry of an amended judgment and a factual determination of the number of days to be credited. The District Court correctly denied Shewalter credit for elapsed street time credit, and consequently, Shewalter's IAC claim fails the second prong of the *Strickland* test as no prejudice can be shown.

¶26 Affirmed in part, reversed in part, and remanded for further proceedings in accordance herewith.

/S/ JIM RICE

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON

13